923 F.2d 839
 Unpublished Disposition
NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
Robert F. DZIURGOT, Plaintiff, Appellant,
v.
UNITED STATES Of America, Defendant, Appellee.
 No. 90-1347.
 United States Court of Appeals, First Circuit.
 Nov. 16, 1990.
 
 Appeal from the United States District Court for the District of New Hampshire; Shane Devine, District Judge.
 Robert F. Dziurgot, on brief pro se.
 Jeffrey R. Howard, United States Attorney, and Peter E. Papps, First Assistant U.S. Attorney, on brief, for appellee.
 D.N.H.
 AFFIRMED.
 Before BREYER, Chief Judge, and SELYA and CYR, Circuit Judges.
 PER CURIAM.
 
 
 1
 Petitioner-appellant Robert Dziurgot was convicted in the District of New Hampshire of receipt and interstate transportation of stolen property, 18 U.S.C. Secs. 2314-15, on September 22, 1980. He had been charged with wrongfully redeeming certain stolen Dean Witter bonds. On October 20, 1980, he was sentenced to five years' imprisonment, to run consecutively to the two-year sentence he had been given on related tax evasion charges. He appealed to the court of appeals, which on November 16, 1981 affirmed his conviction. United States v. Dziurgot, 664 F.2d 6 (1st Cir.1981). Dziurgot subsequently failed to surrender for incarceration, instead fleeing to England. Over four years later, on March 4, 1986, he was arrested in Florida, where he had been living under an assumed name. He was convicted of bail jumping and sentenced to an additional two years' imprisonment.
 
 
 2
 On October 18, 1989, Dziurgot filed the instant pro se motion to vacate, set aside, or correct sentence under 28 U.S.C. Sec. 2255. He alleged that, at some time following the conclusion of his trial, attorney Jack David, who represented him both at trial and on appeal, became the subject of an investigation by the New Hampshire United States Attorney's Office. This is the same office which prosecuted Dziurgot and briefed and argued the government's case on appeal. Although in his brief on appeal Dziurgot states that David became the subject of this investigation "sometime either during the trial or immediately following the trial," in the district court proceedings Dziurgot specifically and unequivocally alleged that the investigation began after the trial. Dziurgot further alleged that the investigation continued until sometime after oral argument of the appeal in the court of appeals. In his brief on appeal (but not in the district court) Dziurgot adds the allegation that the very attorney who headed the investigation also argued the government's case before the court of appeals. Consequently, Dziurgot argues that the investigation of David after trial and during sentencing in the district court, and during Dziurgot's appeal, created a conflict of interest surrounding David's representation, thereby violating Dziurgot's right under the sixth amendment of the U.S. Constitution to effective assistance of counsel.
 
 
 3
 Dziurgot also filed two motions in the district court. He moved for appointment of counsel and for leave to take discovery under Rule 6 of the 28 U.S.C. Sec. 2255 Rules. In that motion he argued that he needed discovery "to obtain additional information regarding the investigation, the extent of Mr. David's involvement, and the effect that such an investigation or fear of such an investigation had on Mr. David." Dziurgot cites his concern that David may have agreed to compromise Dziurgot's appeal in return for an undertaking by the prosecution not to indict David.
 
 
 4
 Dziurgot also moved that a new judge, other than Judge Devine, the trial judge, determine his Sec. 2255 petition. He alleged that Judge Devine knew or should have known of the investigation, indeed that the "initial suggestion" for the investigation had come from Judge Devine. Accordingly, he argued that it was inappropriate for Judge Devine to act on a Sec. 2255 petition alleging that the investigation created a conflict of interest denying Dziurgot effective assistance of counsel. In his brief on appeal, Dziurgot further asserts for the first time that Judge Devine acted improperly in not disclosing to Dziurgot the existence of this conflict of interest, so that Judge Devine should not be permitted in a Sec. 2255 context to review the correctness of his decision not to disclose.
 
 
 5
 A magistrate on January 10, 1990 issued a report and recommendation recommending that Dziurgot's Sec. 2255 petition be dismissed without a hearing. The magistrate reasoned that the record conclusively refuted Dziurgot's claim that David's conflict of interest had denied him the effective assistance of counsel. According to the magistrate, Dziurgot did not allege, and the record did not contain, any specific indication that David's potential conflict of interest had adversely affected David's representation of Dziurgot. The magistrate further recommended that Dziurgot's motions for appointment of counsel and discovery and for a new trier of facts be denied as moot. Following Dziurgot's timely objections to the magistrate's report and recommendation, the district court on February 8, 1990 approved and adopted the report and recommendation without discussion. Dziurgot appeals. We affirm.
 
 
 6
 It is well-settled that "[i]n order to establish a violation of the Sixth Amendment, a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance." Cuyler v. Sullivan, 446 U.S. 335, 348 (1980). Although Cuyler itself involved counsel's joint representation of criminal defendants, the Cuyler standard has been applied generally to other conflict of interest situations. Strickland v. Washington, 466 U.S. 668, 692 (1984); Mannhalt v. Reed, 847 F.2d 576, 580 (9th Cir.), cert. denied, 488 U.S. 908 (1988); United States v. Horton, 845 F.2d 1414, 1418 (7th Cir.1988); Zamora v. Dugger, 834 F.2d 956, 960-61 (11th Cir.1987); United States v. McLain, 823 F.2d 1457, 1463 (11th Cir.1987); United States v. Hearst, 638 F.2d 1190, 1193 (9th Cir.1980), cert. denied, 451 U.S. 938 (1981).
 
 
 7
 A habeas corpus petition under 28 U.S.C. Sec. 2255 can be dismissed without an evidentiary hearing where the petition "(1) is inadequate on its face, or (2) although facially adequate, is conclusively refuted as to the alleged facts by the files and records of the case." United States v. Cermark, 622 F.2d 1049, 1051 (1st Cir.1980) (quoting Moran v. Hogan, 494 F.2d 1220, 1222 (1st Cir.1974)). Applying this standard, and also taking judicial notice of the records of the court of appeals pertaining to Dziurgot's appeal, see E.I. DuPont de Nemours & Co. v. Cullen, 791 F.2d 5, 7 (1st Cir.1986), and cases cited therein, we conclude that Dziurgot's petition was properly dismissed because his allegations of adverse impact on David's representation due to the potential conflict of interest either were facially inadequate or were conclusively refuted by the record.
 
 
 8
 We shall examine each of Dziurgot's allegations of adverse impact in turn. His Sec. 2255 petition contained no such allegations at all. However, he did allege adverse impact in his objections to the magistrate's report and recommendation.
 
 
 9
 First, Dziurgot alleged that certain documents were not introduced at the trial, and therefore included in the appeal, that would have aided his case. He pointed specifically only to a document identified as Exhibit A to his objections, a document signed by Dean Witter releasing Dziurgot from civil liability for wrongful redemption of the Dean Witter bonds. Apparently this release was signed as part of a settlement of Dean Witter's civil suit against Dziurgot seeking to recover damages for wrongful conversion of the bonds. We do not see how proof of settlement of the civil suit would have materially aided Dziurgot in his criminal defense. More important, Dziurgot's assertion that this and other unspecified documents were not introduced at trial is irrelevant to the conflict of interest issue raised in his petition. In the district court proceedings Dziurgot was quite clear in his assertion that the investigation of David, and thus the alleged conflict of interest, commenced only after the conclusion of his trial. Failure to introduce documents at trial, therefore, cannot constitute an adverse consequence of the potential conflict of interest.
 
 
 10
 Dziurgot further pointed to the fact "that for some unknown reason, Mr. David had filed a Motion in the New Hampshire courts to have the transcripts of the Tax Trial delayed and the transcript from the instant case was completed first so that this case could be presented to the Appellate Court before the Tax Case." Dziurgot refers to his appeal from his tax evasion conviction, which was pending before this court at roughly the same time as the appeal at issue in the instant case, which was from his stolen property conviction. David apparently acted as counsel on both appeals. After this court affirmed Dziurgot's stolen property conviction on November 16, 1981, David filed on Dziurgot's behalf a motion for voluntary dismissal of the tax evasion appeal on December 29, 1981, citing Dziurgot's desire to commence serving his sentence. Dziurgot then fled the country.
 
 
 11
 Dziurgot offers no reason whatsoever, nor do we perceive any, to suspect that David's apparent decision to have this court decide the stolen property appeal first was in any way "adverse" to Dziurgot's interests. Dziurgot sets forth no reason to doubt that David's timing of the preparation of the transcripts, if indeed it had any significance at all, was anything other than a minor tactical decision, probably intended to ensure that this court would hear first the appeal that David deemed more promising on the merits. This allegation cannot constitute the "adverse effect" on counsel's representation necessary to make out a sixth amendment violation.
 
 
 12
 Finally, Dziurgot alleged that adverse impact lay in "not just one specific issue but the manner in which the appeal was handled." Dziurgot added that "in spite of promises of obtaining 'Recognized Appellate Counsel,' Mr. David compiled the appeal and also argued the appeal, knowing that he had never handled such a matter in the area of Criminal Law before."
 
 
 13
 We have reviewed the entire file of Dziurgot's appeal, including both the brief and the reply brief filed by David on Dziurgot's behalf. Both briefs are well-reasoned and thorough. Dziurgot has not pointed to any colorable argument omitted from the briefs. The initial brief is lengthy, fifty-four pages with extremely narrow margins on all sides. So, too, is the reply brief, twenty-five pages with similarly narrow margins. Clearly, David did not stint Dziurgot in terms of effort.
 
 
 14
 More important, the initial brief contains eleven pages of rather impassioned argument, and the reply brief nine pages, complaining of prosecutorial misconduct in Dziurgot's trial. David charged the government--the very office and individual whose pending investigation of David is said to have created an actual conflict of interest--with having improperly attempted to prejudice the jury against Dziurgot (1) by using irrelevant prior statements to impeach his credibility, (2) by attacking his character during summation, (3) by adversely commenting on Dziurgot's failure to testify, and (4) by suggesting that facts not in evidence supported conviction. Indeed, in our opinion in Dziurgot's appeal we took special note of this aspect of David's argument, stating, "Defendant devotes eleven pages of his brief to charges of improprieties by the Assistant U.S. Attorney." Dziurgot, supra, 664 F.2d at 9. Our review of David's briefs conclusively refutes any suggestion of an adverse effect on the quality of the briefing on Dziurgot's behalf. These zealous filings obviously are not the work of an attorney cowed by fear of an investigation, or pulling punches as part of some illicit deal.
 
 
 15
 We agree with the magistrate that, given the manifest adequacy of David's briefs, the usual run of deficiencies in oral argument ordinarily would not suffice to establish an "adverse effect." As the magistrate pointed out, it is the parties' briefs, not oral argument, that constitute the heart and substance of an appeal. Dziurgot has not alleged any particular defect in the argument on his behalf. In any event, the magistrate is correct that this court has no record of David's 1981 argument, so we could not now meaningfully review its adequacy.
 
 
 16
 As for Dziurgot's complaint that David reneged on a promise to obtain counsel more experienced in the area of criminal law to handle the appeal, we have already concluded that the record, including the files of the court of appeals, conclusively refutes such other allegations of adverse effect as are made by Dziurgot. Accordingly, although we agree that if David knew of the investigation David may have had, and breached, an ethical obligation to inform Dziurgot of the investigation and the possibility that it could affect his judgment as Dziurgot's counsel, McLain, supra, 823 F.2d at 1464, we cannot find that David's decision to handle the appeal adversely affected the quality of representation accorded Dziurgot on appeal.
 
 
 17
 Although Dziurgot asserted that the potential conflict of interest also existed while David represented him post-trial and during sentencing in the district court, Dziurgot made no specific allegations of any adverse effect on David's representation in the district court.
 
 
 18
 The two cases on which Dziurgot relies to support his position that David's potential conflict of interest denied him effective assistance of counsel are both easily distinguishable. In McLain, supra, 823 F.2d at 1463-64, the Eleventh Circuit held that, in a case where defendant's trial counsel had been under investigation by the prosecutor during trial, an adverse impact on counsel's performance had been shown. In the instant case, by contrast, there can be no claim that a conflict of interest affected the trial proceedings, and, again, no sufficient allegations of adverse impact on appeal were set forth.
 
 
 19
 In the other case, United States v. DeFalco, 644 F.2d 132 (3d Cir.1979), defendant's counsel was under indictment by the prosecution during the pendency of the defendant's appeal. Indeed, counsel even engaged in plea bargaining with the prosecution before the appeal was decided, although apparently this did not occur until after briefing. The Third Circuit, sitting en banc, held by a 6-4 vote that the circumstances of the case posed such a serious actual conflict of interest that, if on remand the government could not show a knowing waiver by defendant, the sixth amendment entitled defendant to a direct appeal de novo even without a particularized showing that the conflict of interest had adversely affected counsel's performance. In effect, the court found that the conflict of interest was so grave that adverse impact could be presumed. However, the potential conflict of interest in the instant case was not nearly so severe. David was merely under investigation during the appeal. He had not been indicted, nor was he ever subsequently prosecuted. Indeed, the plurality opinion in DeFalco (joined by five of the ten judges) took pains to limit the en banc panel's holding to the particular circumstances of that case, stating,
 
 
 20
 "It is elementary law that all these facts are essential ingredients in the rule we suggest today.... This is not a case of mere indictment of a lawyer; it is indictment plus plea bargaining plus entry of a plea of guilty."
 
 
 21
 Id. at 137 n. 5 (emphasis in original). Consequently, DeFalco casts no doubt on our holding that, under the far less troublesome facts here, a showing of an adverse effect on counsel's representation under Cuyler was necessary to demonstrate a sixth amendment violation.
 
 
 22
 Turning to the district court's denial of Dziurgot's motion for appointment of counsel and for leave to take discovery, Rule 6 of the 28 U.S.C. Sec. 2255 Rules provides that "[a] party may invoke the processes of discovery available under the Federal Rules of Criminal Procedure or the Federal Rules of Civil Procedure or elsewhere in the usages and principles of law if, and to the extent that, the judge in the exercise of his discretion and for good cause shown grants leave to do so, but not otherwise." In light of Dziurgot's failure to allege any adverse effect on counsel's representation not refuted by the record, we cannot say that the district court abused its discretion in denying Dziurgot's motion. Certainly we do not quarrel with Dziurgot's assertion on appeal that, if discovery were to uncover evidence suggesting that David pulled his punches in his post-trial and appellate representation of Dziurgot in return for the prosecution's tacit or explicit undertaking not to indict David, Dziurgot would have a meritorious sixth amendment claim. However, the record evidence pertaining to David's representation demonstrates that the possibility that discovery would uncover such evidence is exceedingly remote. To obtain leave to take discovery a Sec. 2255 petitioner must show some basis for discovery more substantial than the purely speculative and hypothetical basis Dziurgot urged here. Under the circumstances of this case, therefore, the district court acted within its discretion in declining to find good cause to permit Dziurgot to embark on a fishing expedition in the name of discovery.
 
 
 23
 We also see no error in the district court's denial of Dziurgot's motion that his Sec. 2255 petition be determined by a trier of facts other than Judge Devine, the trial judge. Dziurgot relies on Halliday v. United States, 380 F.2d 270 (1st Cir.1967), in which we held that, although ordinarily Sec. 2255 petitions are assigned to the trial and/or sentencing judge because of that judge's familiarity with the matter, a district judge who had made a finding of the voluntariness of a plea of guilty should not act on a Sec. 2255 petition requiring him "to take new evidence and, in effect, review the correctness of his own determination." Id. at 272. Dziurgot alleged that Judge Devine knew or should have known of the investigation. In his brief on appeal, Dziurgot further states that the district judge should have informed Dziurgot of the investigation and should not have acted on a Sec. 2255 petition requiring him to assess the propriety of his failure to so inform Dziurgot. However, even assuming, arguendo, that Dziurgot's argument would bring this case within the rule announced in Halliday, we expressly stated in Halliday that "[t]his interdiction does not mean that the sentencing judge cannot review a Sec. 2255 petition to conclude, if appropriate, that no evidentiary hearing is required." Id. at 274. Accordingly, Judge Devine acted properly in reviewing Dziurgot's petition to conclude that it merited dismissal without an evidentiary hearing.
 
 
 24
 We turn, finally, to Dziurgot's allegation that Judge Devine knew about and in fact suggested the investigation, and acted improperly in failing to disclose the existence of the investigation to Dziurgot. This allegation of improper conduct by Judge Devine has never been urged by Dziurgot as a basis for Sec. 2255 relief. In his motion for a new trier of facts in the Sec. 2255 proceedings, and again in his objections to the magistrate's report and recommendation, Dziurgot did allege that Judge Devine had known of the investigation and therefore should not sit on the Sec. 2255 petition. However, Dziurgot said nothing to suggest that Judge Devine's conduct might itself warrant Sec. 2255 relief or might in any way affect Dziurgot's substantive entitlement to Sec. 2255 relief. The magistrate's report and recommendation made no reference to any such substantive issue and, again, Dziurgot's objections to the magistrate's report and recommendation did not point this out or in any way fault the magistrate for ignoring this issue. It is well-settled in Sec. 2255 cases, as elsewhere, that an issue not raised in the district court cannot be considered on appeal. Dziurgot v. Luther, 897 F.2d 1222, 1224 (1st Cir.1990); United States v. Valencia-Copete, 792 F.2d 4, 5 (1st Cir.1986); United States v. Winter, 730 F.2d 825, 827 (1st Cir.1984). Dziurgot's status as a pro se litigant does not exempt him from this rule. We note, moreover, that Dziurgot is an attorney and would therefore be in a poor position to plead unfamiliarity with procedural requirements.
 
 
 25
 In any event, it does not appear that this allegation, had it been made in the district court, would have helped Dziurgot to avoid dismissal without an evidentiary hearing. We can identify two potential sources of an obligation on the part of the district judge, were it demonstrated that he knew of the potential conflict, to disclose it to Dziurgot and warn him of the risks: (1) the supervisory rule we announced in United States v. Foster, 469 F.2d 1 (1st Cir.1972), and (2) the sixth amendment. We would conclude that neither of these theories would require an evidentiary hearing on this issue.
 
 
 26
 In Foster, supra, 469 F.2d 1, a case of joint representation of criminal co-defendants, we invoked our supervisory authority to require that a warning be given by the trial judge and held that, absent such a warning, the burden shifted to the government to show an absence of prejudice. However, we clarified the application of Foster in Brien v. United States, 695 F.2d 10 (1st Cir.1982), where the defendant contended that he should have been given the Foster warnings because both he and his co-defendant in a severed trial were represented by members of the same law firm. In Brien we held that because neither Foster nor any of its progeny had "referred explicitly to severed trials," "we cannot say that a district judge sitting at the time [defendant's] case arose would have understood that he was obligated to give such a warning sua sponte." Brien, supra, 695 F.2d at 14. Accordingly, we ruled that "[b]ecause '[w]e do not require the court to predict cases elaborating duties imposed pursuant to our supervisory powers,' United States v. Waldman, 579 F.2d 649, 652 (1st Cir.1978), it would be inappropriate to impose Foster's burden-shifting requirement here." Brien, supra, 695 F.2d at 14. Precisely the same reasoning governs the instant case. At the time of trial and sentencing in the instant case in 1980 (two years before our decision in Brien ), neither Foster nor any of its progeny explicitly or unequivocally required that a warning be given about a potential conflict of interest such as the one alleged here. Consequently, in this case, as in Brien, we would not impose the burden-shifting standard of Foster, but instead would "review [defendant's] claim pursuant to sixth amendment standards." Brien, supra, 695 F.2d at 14.
 
 
 27
 Under sixth amendment standards, there can be no dispute that if the district judge knew of the investigation he erred in not informing Dziurgot and in not inquiring into the matter. See, e.g., Cuyler, supra, 446 U.S. at 347; Guaraldi v. Cunningham, 819 F.2d 15, 18 (1st Cir.1987); United States v. Fahey, 769 F.2d 829, 834-35 (1st Cir.1985). However, we held in Brien, supra, 695 F.2d at 14-16, that where the district judge has failed to give the necessary warnings, the defendant must meet the Cuyler standard in order to make out a sixth amendment violation. "[T]he conflict must be real, not some attenuated hypothesis having little consequence to the adequacy of representation." Id. at 15. Consequently, the district court's alleged error would not require Sec. 2255 relief absent a finding of "an actual as opposed to a hypothetical and unreal conflict" of interest. Id. at 15 n. 10. We have already held that the district judge acted correctly in dismissing the petition without a hearing for lack of adequate allegations of adverse impact. Although Brien focuses on the Cuyler requirement of an "actual conflict" rather than on the "adverse effect" requirement, under the circumstances of this case Dziurgot's failure to set forth adequate allegations of adverse effect is tantamount to a failure to adequately allege an "actual," as opposed to a "potential" or hypothetical, conflict. See Honneus v. United States, 509 F.Supp. 1135, 1138-39 (D.Mass.1981) (suggesting that, at least in some cases, the two-prong "actual conflict" plus "adverse effect" test of Cuyler collapses into a single inquiry in which "[l]ooking for 'actual conflict' would be the same as finding 'adverse effect' "). Thus, even if Dziurgot had raised this issue in the district court, we would find dismissal of such a claim proper for the reasons we have already stated.
 
 
 28
 The judgment of the district court is affirmed.